**SIGNED.**

Dated: June 09, 2009



_____
**JAMES M. MARLAR**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 13 |
| JAMES T SHERMAN, | ) No. 4:09-bk-02833-JMM |
| Debtor. | ) **MEMORANDUM DECISION** |

On May 26, 2009, this court held an evidentiary hearing to consider whether to confirm the Debtor's Chapter 13 plan (DN 17). Concurrently therewith, counsel for one of the creditors urged the court, if it denied confirmation, to either dismiss the case or lift the automatic stay (DN 30). The Debtor was represented by Robert M. Cook; creditor Gretchen H. Quinn ("Ms. Quinn") was represented by David L. Rose and Carissa K. Seidl. After consideration of the evidence and the law, the court now rules.

## THE PLAN

The Debtor filed his Chapter 13 petition on February 19, 2009. A Chapter 13 plan was filed on March 19, 2009. The plan, in pertinent part, provided for a monthly payment, over 60 months, of $300.75. This is a total of $18,045. From that figure, 10% is deducted for the Chapter 13 trustee's fee, leaving $16,241 to be distributed to unsecured creditors (DN 17).

## THE SCHEDULES

The Debtor's schedules were filed March 13, 2009. The unsecured creditors numbered only five, the most significant of which was Ms. Quinn, the Debtor's former wife ($607,147), and the other four being attorneys' fees (either the Debtor's or Ms. Quinn's), amounting to $171,027, all related to a recent divorce. These total $778,174.

The Debtor has no secured debt and no priority debts.

Thus, the Debtor's entire Chapter 13 case is devoted to restructuring payout to Ms. Quinn, the Debtor's former wife, and four divorce attorneys.

In passing, it is likely that the Debtor is not eligible for Chapter 13 because the listed unsecured debts are $778,174. The statute, 11 U.S.C. § 109(e), requires that a Chapter 13 debtor have unsecured debts of less than $336,900. Simply because the Debtor checked the "disputed, contingent, unliquidated" boxes next to each such creditor does not make it so, especially in light of a final (but for existing appeals) divorce decree. (DN 24).

## MOTION FOR RELIEF

On March 24, 2009, Ms. Quinn asked this court to lift the stay, so that she could return to Superior Court and seek enforcement of the decree's property division provisions, primarily as it concerned former community property known as 34114 N. Mirage Court, Queen Creek, Arizona.

## THE QUEEN CREEK HOUSE

This Chapter 13 proceeding was filed for the purpose of trying to save the Queen Creek home from forced sale. The Debtor, asserting various arguments (discussed below), seeks to have Ms. Quinn's interest in the home declared to be that of only an unsecured creditor.

Ms. Quinn, on the other hand, asserts that her half-interest's value was determined on the date of the decree (December 31, 2007), and that she has an enforceable lien thereon to the extent of her one-half interest on that date, $315,000.

In the decree, the Superior Court judge determined the value to be $630,000 and ordered the Debtor to refinance it within 60 days, and pay Ms. Quinn $315,000 or that the property would be sold by a special master (real estate commissioner) (Decree at para. 10). The court did not say, however, how the proceeds were to be divided once sale occurred. This is, whether Ms. Quinn was to receive $315,000, or one-half of the proceeds.

What none could foresee, when the Superior Court entered its ruling, was that the Arizona real estate market would quickly deteriorate, and that real property would lose significant market value.

This economic turn of events raises many interesting issues, all related to the divorce case. Among them are:

1. If the house had appreciated in value after the decree, would Ms. Quinn get only $315,000, or up to one-half of the new, higher value?
2. If the house declined in value, after the decree, would Ms. Quinn still be entitled to $315,000, or only one-half of the net sales price?
3. Was Ms. Quinn entitled to an equitable lien on the property in the amount of $315,000, when the Decree was entered in December, 2007?
4. If Debtor was not able to refinance, and the marketing period for an eventual sale was not immediate, which party must bear the loss if Ms. Quinn is determined to be a secured creditor for $315,000.
5. If Ms. Quinn was not awarded an equitable lien for $315,000, is she only an unsecured creditor of husband as to her interest in the Queen Creek home?
6. Whether Mr. Sherman can inject his claim of a $150,000 homestead exemption ahead of Ms. Quinn, once her status as a co-owner,

lienholder or unsecured creditor is established, as such status relates to the real property?

These are questions which only the Superior Court can answer, in interpreting the parties' legal interests as they relate to disputed paragraph 10 of the Decree. That paragraph states:

> 10. The Respondent shall have 60 days from the date of this Order to refinance the marital home and to buy the Petitioner out of her 50% interest in the amount of $315,000.00. If the Respondent is unable to refinance the home and to buy the Petitioner out of her share of the marital home, the Court will appoint a Real Estate Commissioner to have the house appraised and to list and manage the sale of the home. The Fees of the Real Estate Commissioner will be paid from the proceeds of the sale prior to the division of the proceeds between the Petitioner and Respondent. The parties shall notify the Court if the Respondent will not be refinancing the marital home.

## **MORE PROBLEMS CONCERNING THE HOME**

The future of this home is now the entire focus of this Chapter 13. The real estate commissioner appointed by the court, Matthew A. Ritter, Esq., obtained an offer on the home for $380,000 and was prepared to close it on March 18, 2009 (Ex. F). The seller (Ritter) signed the contract on February 19, 2009, the same date the Debtor filed his Chapter 13 petition.

Then, in the Chapter 13 case, on March 20, 2009 (DN18), the Debtor himself "offered" to buy this home for $50,000 less, in the amount of $330,000, proposing to keep $150,000 for his "homestead" interest and pay Mr. Ritter $5000 as a fee/commission. The balance, or $175,000 would be paid to Ms. Quinn in settlement of her one-half interest (DN 18). This sale was proposed as being "free and clear of any liens or encumbrances," would "resolve any and disputes between Debtor James T. Sherman and Gretchen H. Quinn aka Gretchen Sherman," and further noted that the sellers were both the Debtor <u>and</u> Ms. Quinn, even though Ms. Quinn objected to the sale (DN 18, 26). And, as Ms. Quinn notes in her objection (DN 26), she "is on the deed as a joint tenant."

1  At the hearing on the sale motion, this court deferred its ruling, until such time as all
2  issues could be fully briefed and heard in the context of whether the Debtor's Chapter 13 plan could
3  be confirmed.

## THE MOTION TO DISMISS

As matters were proceeding, Ms. Quinn also filed a motion to dismiss the case as a "bad faith" filing (DN 30), on grounds including that, since the case was essentially a "two-party dispute," a divorce case which has now spread to the federal courts, that the "totality of circumstances" mandates dismissal.

Since good faith is also an element which is required in order for a court to confirm a Chapter 13 plan, 11 U.S.C. § 1325(a)(3), this court deferred that motion, to be heard in the context of a full evidentiary hearing on plan confirmation.

## RULING

Based on a totality of circumstances test, this court is unable to confirm the Debtor's plan, and must dismiss the Chapter 13 case. This is because the status of Ms. Quinn, as to the Queen Creek home, is still unsettled. The Superior Court is in the best position to analyze her legal position, and interest in, that real property. Until the Superior Court further clarifies its order and further defines Ms. Quinn's and Mr. Sherman's rights, this court cannot opine on what the Superior Court's divorce decree intended for the parties as to this asset. Until those matters are settled, the Debtor is not in a position to comply with Chapter 13 mandates. The case must return to Superior Court for those new rulings. Accordingly, finding that this case is, for the time being, only a two-party dispute, it shall be dismissed for lack of good faith. 11 U.S.C. §§ 1325(a)(3); 1307(c). All other outstanding motions are DENIED, as moot.

DATED AND SIGNED ABOVE.

COPIES served as indicated below on the date signed above:

Robert M. Cook
Law Offices of Robert M. Cook
219 W Second St
Yuma, AZ 85364
Attorney for Debtor						Email: robertmcook@yahoo.com

David L. Rose and Carissa K. Seidl
Rose and Huey
1440 E. Washington, Suite 200
Phoenix, Arizona 85034					Email: davidrose@arizonalaw.com
Attorneys for Gretchen Quinn				Email: carissaseidl@arizonalaw.com

Dianne Crandell Kerns, Trustee
7320 N. La Cholla #154
PMB 413
Tucson, AZ 85741-2305					Email: mail@dcktrustee.com

Office of the U.S. Trustee
230 N. First Avenue, Suite 204
Phoenix, AZ 85003


By ___/s/ M.B. Thompson___
    Judicial Assistant